GAUDIN, Judge.
This juvenile court proceeding involves custody of a three-year-old boy. Custody of the child, whose mother was killed in a fire in 1988 and whose father is under indictment for second degree murder of his *785 wife (and the child’s mother), was changed from paternal grandparents to an aunt living in Costa Rica. We reverse and set aside this custody ruling as the young boy was not shown to be what the law calls “a child in need of care.”
In January of 1990, following an anonymous complaint, the Department of Social Services caused a petition to be filed alleging that the young boy was in need of care. According to LSA-C.J.P. art. 13(14), a “child in need of care” is described as a child:
“(a) Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seriously endangers the physical, mental, or emotional health of the child;
“(b) Whose physical, mental, or emotional condition is substantially threatened or impaired as a result of the refusal or neglect by his parent to supply the child with necessary food, clothing, shelter, treatment either by medical care or in accordance with the tenets of a well-recognized religious method of healing with a reasonable proven record of success, counseling, or education, or as a result of the parent’s neglect or imposition of cruel punishment; however, nothing herein shall prohibit the court from ordering medical services for the child when there is substantial risk of harm to the child’s health or welfare; or “(c) Who is without necessary food, clothing, shelter, medical care, education, or supervision because of abandonment by, or the disappearance or prolonged absence of, his parent or, for any other reason, is placed at substantial risk of imminent harm because of the continuing absence of the parent. A child whose parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, be determined to be a child in need of care.”
When the department’s petition was filed, the young boy in question was residing with his paternal grandparents. In fact, the child had resided with his paternal grandparents since he was six months of age and had been quite well cared for.
Following a hearing on the department’s petition, the juvenile court judge revoked the paternal grandparents’ custody and ordered the young boy sent to Costa Rica, where the 49-year-old aunt lives with a common law husband. The aunt speaks no English, the young boy no Spanish.
This appeal by the paternal grandparents followed. The record in this case is completely devoid of any meaningful testimony or evidence indicating that the young boy was ever “in need of care.” He was never neglected, deprived of anything, abused or threatened.
The department, as appellee, argues that the young boy was “in need of care” only because the father, at the hearing, so stipulated. Our careful examination of the record shows that the father, apparently because of his mental and other problems, admitted that he was unable to care for his son.
The juvenile court judge did not find that the young boy was “in need of care,” i.e., that he fit under (a), (b) or (c) of Art. 13(14). The sole reasons for ordering the custody switch, according to the juvenile court judge’s assigned reasons for judgment, were because of the ages of the paternal grandparents and that a change “... in the long term ...” would be in the young boy’s best interests. The grandfather is 80 years of age, the grandmother is 73. Both, however, are very active and in excellent health. A paternal uncle said that he would accept custody if the paternal grandparents experience health problems.
In any event, the father’s abstract stipulation that his son was “in need of care” cannot either be binding on the paternal grandparents or, standing alone in an otherwise vacuum, serve as proof that the young boy was in reality “in need of care.”
If the young boy was not “in need of care” as spelled out in the code of Juvenile Procedure, and the record overwhelmingly suggests that he was not, the juvenile court judge had no authority to remove this youngster from his paternal grandparents’ *786 custody and send him to a totally foreign and perhaps detrimental environment.
REVERSED.